UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID DELRE, on Behalf of Himself and all Others
Similarly Situated,

                      Plaintiff,                      **MEMORANDUM OF DECISION AND ORDER**

    -against-                                       12–CV–2429 (ADS)(AKT)

WAYNE PERRY, DYNOVA LABORATORIES, INC.,
SICAP INDUSTRIES, LLC, and HI-TECH
PHARMACAL, INC.,

                      Defendants.
----------------------------------------------------------X
MATTHEW HARRISON, on Behalf of Himself and
all Others Similarly Situated,

                      Plaintiff,

    -against-                                       12–CV–2897 (ADS)(AKT)

WAYNE PERRY, DYNOVA LABORATORIES, INC.,
SICAP INDUSTRIES, LLC, and HI-TECH
PHARMACAL, INC.,

                      Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Faruqi & Faruqi, LLP**
*Attorneys for the Plaintiff David Delre*
369 Lexington Avenue
10th Floor
New York, NY 10017
    By:  Antonio Vozzolo, Esq.
          Christopher Marlborough, Esq., Of Counsel

**Bursor & Fisher, P.A.**
*Attorneys for the Plaintiff Matthew Harrison*
888 Seventh Avenue
New York, NY 10019
    By:  Scott A. Bursor, Esq.
          Joseph Ignatius Marchese, Esq., Of Counsel

**Couch White LLP**
*Attorneys for the Defendant Wayne Perry*
540 Broadway
PO Box 22222
Albany, NY 12201
   By:   Donald J. Hillmann, Esq., Of Counsel

**Dewey Pegno & Kramarsky LLP**
*Attorneys for the Defendant Dynova Laboratories, Inc.*
777 Third Avenue
77th Floor
New York, NY 10017
   By:   Thomas E.L. Dewey, Esq.
           Angela Harris, Esq., Of Counsel

**Tashlik, Kreutzer, Goldwyn & Crandell P.C.**
*Attorneys for the Defendant Hi-Tech Pharmacal, Inc.*
40 Cuttermill Road
Suite 200
Great Neck, NY 11021
   By:   Jeffrey N. Levy, Esq., Of Counsel

**NO APPEARANCE:**

SiCap Industries, LLC

**SPATT, District Judge:**

      The Plaintiffs David Delre ("Delre") and Matthew Harrison ("Harrison," and collectively "the Plaintiffs"), individually and on behalf of all others similarly situated, have each brought separate actions against the Defendants Wayne Perry ("Perry"), Dynova Laboratories, Inc. ("Dynova"), SiCap Industries, LLC ("SiCap"), and Hi-Tech Pharmacal, Inc. ("Hi-Tech," and collectively "the Defendants"), seeking to recover damages for the Defendants' alleged violations of various consumer protection and warranty laws in connection with their marketing and sale of a group of over-the-counter drugs. The Plaintiffs now jointly move pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 42(a)(2) and 23(g) to consolidate their actions and appoint their respective counsel, Faruqi & Faruqi, LLP ("Faruqi & Faruqi"), and

Bursor & Fisher, P.A. ("Bursor & Fisher"), as co-lead interim class counsel. For the reasons set forth below, the Court grants the Plaintiffs' motions.

## I. BACKGROUND

### A.  The Plaintiff Delre's Complaint

On May 15, 2012, the Plaintiff Delre commenced a class action lawsuit against the Defendants by filing a Complaint in the United States District Court for the Eastern District of New York (Case No. 12-CV-2429). The case was originally assigned to United States District Court Judge Brian M. Cogan in the Brooklyn Courthouse, but was thereafter reassigned to this Court by Chief Judge Carol Bagley Amon.

According to Delre's Complaint, the Defendants sold a range of "Sinus Buster/Buster Brands products," which included Sinus Buster, Sinus Buster Mild, Cold Buster f/k/a Sinus Buster Anti-Cold Formula ("Cold Buster"), Allergy Buster f/k/a Sinus Buster Allergy Formula, and Headache Buster f/k/a Sinus Buster Headache Formula (collectively "the Sinus Buster Products"). The Sinus Buster Products sell across the country for $10.00 to $15.00 per bottle. Apparently, the Sinus Buster Products contain capsaicin—an ingredient used in hot cayenne peppers to make them hot—which the Defendants claim can treat sinus congestion and related cold, allergy and headache symptoms. While the Defendants sell the Sinus Buster Products as over-the-counter homeopathic drugs, Delre asserts that the Sinus Buster Products are in fact "illegal [] non-homeopathic drugs" and that the Defendants "have misled consumers into believing that the Sinus Products are [] approved" by the U.S. Food and Drug Administration ("FDA") when they are not  (Delre Compl., ¶¶ 7, 8.)

Further, Delre's Complaint questions the efficacy of homeopathic medicines and remedies in general and describes homeopathy as a "200-year old pseudoscience."  (Delre

3

Compl., ¶ 5.) The FDA defines homeopathy as "the practice of treating the syndromes and conditions which constitute disease with remedies that have produced similar syndromes and conditions in healthy subjects." (Delre Compl., ¶ 5.) In a somewhat confusing statement in the Complaint, it is stated that "[u]nder homeopathic theory, the more an ingredient is diluted in a solution, the more potent it purportedly becomes at treating the symptom for which it is known to cause." (Delre Compl., ¶ 5.) The Merriam-Webster Dictionary definition of "homeopathy" is "a system of medical practice that treats a disease especially by the administration of minute doses of a remedy that would in healthy persons produce symptoms similar to those of the disease." Medical Definition of Homeopathy, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/homeopathy (last visited Dec. 17, 2012).

The Sinus Buster Products were created and developed by the Defendant Perry, a resident of New York. Perry also founded the Defendant SiCap in 2003. SiCap, a limited liability company with its principal headquarters in New York, engaged in the design and marketing of purportedly homeopathic herbal based nutritional products. Allegedly, Perry developed the original line of Sinus Buster Products as dietary supplements, rather than homeopathic drugs, and did not list homeopathic dilutions of their ingredients. However, Delre asserts that the Sinus Buster Products were never dietary supplements, but were unapproved illegal drugs, as Perry and SiCap claimed the products could treat, cure or prevent sinus, cold, headache and allergy symptoms.

In his autobiography Working Class Entrepreneur, Perry admits that "early operations with respect to the Sinus Buster Products 'weren't completely legal in the eyes of the government'" and that "even though SiCap initially sold the Sinus Buster Products as dietary supplements, . . . he learned that the FDA considered those products to be [] drugs." (Delre

Compl., ¶ 91.) Thus, SiCap and Perry, finding "'many gray areas in the FDA rules,'" began marketing and selling Sinus Buster Products as homeopathic remedies in 2006. (Delre Compl., ¶ 95.) In this regard, in 2006, SiCap and Perry released a new line of homeopathic Sinus Buster Products, which corresponded with the previous line of Sinus Buster Products that were dietary supplements. The new line of Sinus Buster Products included the same ingredients as the old line. However, each of the Sinus Buster Products in the new line listed a homeopathic concentration of capsaicin as an active ingredient.

In 2008, the Defendant Dynova, a privately held Delaware corporation with its corporate headquarters in New Jersey, acquired SiCap and the Sinus Buster Products, and SiCap became a wholly owned subsidiary of Dynova. Following the acquisition, Perry remained the CEO of SiCap until 2010 and continued to serve as a spokesperson for the Sinus Buster Products. Dynova rebranded the Sinus Buster Products and reformulated Cold Buster for oral administration. Capsaicin became an inactive ingredient in the reformulated Cold Buster, while the homeopathic concentration of Pelagronium sidoides 1X was listed as its only active ingredient. No other Sinus Buster Products were reformulated. Dynova marketed the Sinus Buster Products as "fast, effective and safe." (Delre Compl., ¶ 114.)

In 2012, the Defendant Hi-Tech, a Delaware corporation with its principal place of business in New York, acquired the Sinus Buster Products. High-Tech continues to market and sell the Sinus Buster Products through its Health Care Products division. Perry retains a financial interest in the continued sales of the Sinus Buster Products.

Delre is a citizen of New Jersey who purchased one of the Sinus Buster Products, Cold Buster, for his personal use from a CVS retail pharmacy located in New Jersey. He claims he paid about $11.00 and read, believed and relied on the representations on the product's label.

While Delre does not specifically state what prompted him to take Cold Buster, the Court presumes Delre took Cold Buster to treat cold symptoms, since he used Cold Buster "as directed." (Delre Compl., ¶ 185.)

According to Delre, Cold Buster did not give him the relief promised on the product's label or in the Defendants' advertisements. Instead, according to Delre, Cold Buster was "useless" to him and his family and provided them no relief. (Delre Compl., ¶ 185.) Delre contends that he would not have purchased any Sinus Buster Products if he was aware of the fact that Sinus Buster Products (1) were not proven effective for their intended use; (2) were not effective for their intended use; (3) were not lawful for sale in the United States; (4) were not FDA approved; and (5) were sold as homeopathic products in order to circumvent FDA regulations and oversight, including its requirement that the Defendants prove the efficacy of those products.

According to Delre's Complaint, the Defendants have made the following false and misleading claims in connection to the marketing and selling of the Sinus Buster Products: (1) that the Sinus Buster Products are homeopathic; (2) that the Sinus Buster Products are effective or clinically proven to be effective for their intended use; and (3) that the Sinus Buster Products are FDA approved. Delre asserts that these misrepresentations by the Defendants are material and important to a consumer's purchasing decision, since they concern the effectiveness of the Sinus Buster Products, the qualities of those products and the reason for which they are sold. As such, Delre, on behalf of himself and the members of a class defined as all persons, who within the relevant statute of limitations period, purchased Sinus Buster Products in the United States, brings seven class action claims against the Defendants for (1) violation of Magnuson-Moss Warranty Act, 115 U.S.C. § 2301, et seq.; (2) unjust enrichment; (3) common law fraud; (4)

breach of express warranty; (5) breach of implied warranty of merchantability; (6) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, et seq.; and (7) violation of the consumer fraud laws of the various states.

**B. The Plaintiff Harrison's Complaint**

Less than a month after Delre filed his Complaint, on June 8, 2012, the Plaintiff Harrison, a citizen of Minnesota, also commenced a class action lawsuit against the Defendants by filing a Complaint in the United States District Court for the Eastern District of New York. (Case No. 12-CV-2897.) Initially, Walgreen Co. was included as a defendant in Harrison's Complaint, but was subsequently dismissed from the case. This case was also assigned to this Court.

Like Delre, Harrison's claims arise from the Defendants' sale and marketing of the Sinus Buster Products. According to Harrison's Complaint, although the "Defendants claim [that the capsaicin ingredient included in the Sinus Buster Products] has the remarkable ability to treat sinus congestion and related cold and allergy and headache symptoms," the "Sinus Buster Products are ineffective for this purpose" and "are worthless." (Harrison Compl., ¶ 3.)

More particularly, Harrison alleges that, on or about March 6, 2010, he purchased Sinus Buster for $13.00 from a Walgreen retail pharmacy located in Minnesota. According to Harrison, he paid twice the price of other brand-name nasal sprays he has purchased. In addition, before buying Sinus Buster, Harrison heard a radio advertisement about the product while listening to a sports-talk program and he also read the product claims on the packaging. Harrison contends he relied on the claims that Sinus Buster was an "all natural" "non habit forming formula" and "clinically proven" to provide "fast relief" for "sinus congestion" and "nasal congestion." (Harrison Compl., ¶ 9.) Harrison further contends that these claims are unsubstantiated and that he would not have purchased Sinus Buster if had known that the

7

advertising claims were false. Instead, Harrison would have purchased a different, less expensive nasal spray, which he eventually did because Sinus Buster did not relieve his congestion.

Further, as Delre does, Harrison raises questions concerning the efficacy of homeopathic products. He further alleges that, in any event, the "Sinus Buster Products are not homeopathic" but "are illegal unapproved non-homeopathic drugs." (Harrison Compl., ¶ 6.) In this regard, Harrison contends that the "Sinus Buster Products are marketed and sold by [the] Defendants as homeopathic to avoid substantiation requirements for safety and efficacy of non-homeopathic [over-the-counter drugs." (Harrison Compl., ¶ 6.) Harrison also asserts that the Defendants have misled consumers into believing that the Sinus Buster Products are FDA approved, when they are, in fact, not approved.

Of import, Harrison's Complaint sets forth the same facts found in Delre's Complaint with respect to (1) the history of homeopathic medicine and the FDA's limited regulation of these drugs; (2) the nature of the Defendants and their relationships with one another; and (3) the development, marketing and selling of the Sinus Buster Products by the Defendants, including the rebranding of the Sinus Buster Products as homeopathic remedies. Further, Harrison's Complaint alleges that the Defendants have made the same false and misleading claims in connection to the marketing and selling of the Sinus Buster Products as Delre's Complaint alleges. That is, Harrision also claims that the Defendants have falsely represented (1) that the Sinus Buster Products are homeopathic; (2) that the Sinus Buster Products are effective or clinically proven to be effective; and (3) that the Sinus Buster Products are FDA approved. According to Harrison, these false and misleading claims are material for the same reasons that Delre provides in his Complaint.

Thus, Harrison, on behalf of himself and on behalf of a class defined as all persons who, within the relevant statute of limitations period, purchased Sinus Buster Products in the United States, asserts claims almost identical to the claims asserted by Delre in his Complaint. Namely, Harrison also brings seven class action claims against the Defendants for (1) violation of the Manuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; (2) unjust enrichment; (3) common law fraud; (4) breach of express warranty; (5) breach of implied warranties of fitness and merchantability; (6) violations of Minn. Stat. § 8.31, et seq.; and (7) the consumer fraud statutes of the fifty states.

**C. The Instant Motion**

On August 21, 2012, the Plaintiffs filed a joint motion to consolidate their actions (Case Nos. 12-CV-2429 and 12-CV-2897 respectively) pursuant to Fed. R. Civ. P. 42(a)(2). They argue that their cases should be consolidated because they involve common questions of law or fact. The Plaintiffs also seek the appointment of their respective counsel, Faruqi & Faruqi and Bursor & Fisher, as co-lead interim class counsel pursuant to Fed. R. Civ. P. 23(g).

On September 4, 2012, the Defendants Hi-Tech, Dynova and Perry filed a joint opposition to the Plaintiffs' motion. They contend that consolidation would be improper here because it would confuse a jury and hinder a fair and impartial trial. In the alternative, the Defendants assert that the Plaintiffs' actions should only be consolidated for certain pre-trial purposes. In addition, they take no position with respect to the Plaintiffs' motion to appoint their respective counsel as co-lead interim class counsel, except to state they believe such an appointment is premature at this stage of the matter.

The Defendant SiCap, who has not appeared in this action, has filed no opposition.

## II. DISCUSSION

**A. As to Whether the Plaintiffs' Actions Should be Consolidated**

Fed. R. Civ. P. 42(a) governs the consolidation of actions. Under the Rule,

> [i]f actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

Hence, as long as there will be a fair and impartial trial, "Rule 42(a) . . . empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.1990), cert. denied, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed. 2d 250 (1990).

"The trial court has broad discretion to determine whether consolidation is appropriate." Id. However, the Second Circuit suggests that Rule 42(a) "be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks and citations omitted). In addition, the Second Circuit has explained that while "a district court should consider both equity and judicial economy" in assessing whether consolidation is appropriate, "efficiency cannot be permitted to prevail at the expense of justice" and, thus, "consolidation should be considered when savings of expense and gains of efficiency can be accomplished *without sacrifice of justice*." Id. (emphasis in original) (internal quotation marks and citations omitted). See also Consorti v. Armstrong World Ind., 72 F.3d 1003, 1006 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996); Endress v. Gentiva Health Servs., 278 F.R.D. 78 (E.D.N.Y. 2011).

"The party moving for consolidation bears the burden of showing the commonality of factual and legal issues in the actions it seeks to consolidate." Augustin v. Jablonsky, 99-CV-3126 (DRH)(ARL), 2001 U.S. Dist. LEXIS 10276, at *50 (E.D.N.Y. Mar. 8, 2001), rev'd and remanded on other grounds, 461 F.3d 219 (2d Cir. 2006); Endress v. Gentiva Health Servs., 278 F.R.D. 78 (E.D.N.Y. 2011). . Having reviewed the Plaintiffs' moving papers, as well as the Plaintiffs' individual Complaints, the Court finds that the Plaintiffs have met this burden and that consolidation is appropriate here. The Plaintiffs both bring class action lawsuits on behalf of the same class and raise almost identical claims against the same Defendants. Moreover, both cases involve the same set of facts with respect to the development, marketing and sale of the Sinus Buster Products and allege that the Defendants made a series of false and misleading claims that were material and important to a consumer's purchasing decision. As such, as these cases involve almost identical questions of law and fact as well as almost identical parties, it appears that consolidation will economize both judicial resources and the resources of the parties. See Fed.R.Civ. P. 42(a); Johnson, 899 F.2d at 1285; Augustin, 2001 U.S. Dist. LEXIS at *50; Guidelines For The Division Of Business Among District Judges, Eastern District of New York, Rule 50.3.1 (a) ("A civil case is 'related' to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transaction or events, a substantial saving of judicial resources is likely to result as long as there will be a fair and impartial trial, from assigning both cases to the same judge").

Although the Defendants contend that they will be prejudiced by the consolidation of the Plaintiffs' cases, the Court finds their arguments to be unavailing. Specifically, Defendants assert that "consolidation would confuse a jury and hinder a fair and impartial trial," because the Plaintiffs purchased different products from the line of Sinus Buster Products and that these

products differed as to ingredients, labeling and the symptoms or conditions they treated. (Def. Opp., pg. 4.) However, such "[d]ifferences . . . do not render consolidation inappropriate" because (1) the Plaintiffs have established that "the cases present sufficiently common questions of fact and law," and (2) the Court finds that "the [minor] differences [raised by the Defendants] do not outweigh the interests of judicial economy served by consolidation." Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). See also LeGrand v. New York City Transit Auth., No. 93-CV-0333 (JG), 1999 U.S. Dist. LEXIS 8020, at *23-24 (E.D.N.Y. May 26, 1999).

Moreover, as the Defendants present their arguments in "the most general terms" and "fail to substantiate their fears with any specific examples, [] the Court sees no reason why any risk of confusion or prejudice could not be eliminated at trial with well-crafted jury instructions." Augustin, 2001 U.S. Dist. LEXIS at *51. Indeed, the "risk of confusion or prejudice [is] avoided in [a] consolidated action where [a] district court use[s] 'intelligent management devices' such as thought verdict forms and cautionary and limiting instructions." Id. (quoting Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1008 (2d Cir. 1995), vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp., 518 U.S. 1031, 135 L. Ed. 2d 1091, 116 S. Ct. 2576 (1996)). In addition, importantly, "consolidation here will not prejudice" the Defendants' rights, because "[c]onsolidation 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'" Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 130 (S.D.N.Y. 1997) (quoting Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97, 77 L. Ed. 1331, 53 S. Ct. 721 (1933)).

Accordingly, the Plaintiffs' actions now pending before this Court, Case Numbers 12–CV–2429 and 12–CV–2987 are consolidated for all purposes as "In Re: Sinus Buster Products

Consumer Litigation" under Case Number 12–CV-2429. Thus, Case Number 12–CV–2987 is closed.

**B. As to Whether Faruqi & Faruqi and Bursor & Fisher Should Be Appointed Co-Lead Interim Class Counsel**

Pursuant to Fed. R. Civ. P. 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the class." "Designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]" In re Mun. Derivatives Antitrust Litig., 252 F.R.D. 184, 185-186 (S.D.N.Y. 2008) (citation and internal quotation marks and alterations omitted). In this regard, "[t]he appointment of interim class counsel may be helpful in clarifying responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." In re Facebook, Inc., MDL No. 12-2389, 2012 U.S. Dist. LEXIS 174961, at *53 (S.D.N.Y. Dec. 6, 2012).

"When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." Id. A court may also look to "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). See In re Facebook, Inc., 2012 U.S. Dist. LEXIS at *53.

The Court finds that the Plaintiffs have demonstrated that their respective counsel— Faruqi & Faruqi and Bursor & Fisher— (1) have adequately identified and investigated the potential claims in this action; (2) possess experience in handling class actions, other complex litigation and the types of claims asserted in this action; (3) possess knowledge of the applicable law; and (4) have resources to commit to representing the class. See Fed. R. Civ. P. 23(g)(1)(A).

The Defendants only objection to the Plaintiffs' joint motion for appointment of co-lead interim class counsel is that said motion is premature. However, "[i]n cases . . . where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management." In re Air Cargo Shipping Servs. Antitrust Litig., 240 F.R.D. 56, 57 (E.D.N.Y. 2006). Therefore, "the factors set forth in Rule 23(g)(1) are applicable in ensuring these [two] cases [presently before this Court] are administered efficiently, the claims of named plaintiffs and the putative class members are properly prosecuted, and redundant work is minimized." Szymczak v. Nissan N. Am., Inc., 2012 U.S. Dist. LEXIS 78285, at *6 (S.D.N.Y. May 15, 2012). Accordingly, the Court appoints Faruqi & Faruqi and Bursor & Fisher as co-lead interim class counsel.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiffs' joint motion to consolidate Case Numbers 12-CV-2429 and 12-CV-2897 is granted.

**ORDERED** that the Clerk of the Court is directed to consolidate the two actions set forth above under Case Numbers 12–CV–2429 and Case Number 12–CV–2897 is to be closed; and it is further

**ORDERED** that the consolidated action shall hereinafter be referred to as "In Re: Sinus Buster Products Consumer Litigation" and shall proceed under Case Number 12-CV–2429, and that all filings are to be made only under Case Number 12–CV–2429; and it is further

**ORDERED** that the Plaintiffs' joint motion to appoint Faruqi & Faruqi, LLP and Bursor & Fisher, P.A. as co-lead interim class counsel is granted; and it is further

14

**ORDERED** that the Plaintiffs are directed to file a Consolidated Complaint incorporating the claims of Delre's and Harrison's Complaints. The Consolidated Complaint shall not assert new allegations against the Defendants and the Defendants, having answered Delre's and Harrison's Complaints, will be under no obligation to file additional answers to the Consolidated Complaint; and it is further

**ORDERED** that the caption in this consolidated action shall bear the following caption:

---------------------------------------------------------X

IN RE SINUS BUSTER PRODUCTS CONSUMER
LITIGATION

---------------------------------------------------------X


**SO ORDERED.**

Dated: Central Islip, New York
December 17, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge